**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-00720-WJM

GABRIELLA JARAMILLO, on behalf of D.G., a minor child,

     Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

     Defendant.

---

**ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY
AND REMANDING FOR AWARD OF BENEFITS**

---

     This matter is before the Court on Plaintiff Gabriella Jaramillo's appeal, on behalf of her son D.G., from the Final Decision of Defendant Michael J. Astrue, the Commissioner of Social Security ("the Commissioner"), denying Ms. Jaramillo's application for supplemental security income filed on D.G.'s behalf.  Ms. Jaramillo has filed her Opening Brief (ECF No. 13), the Commissioner filed a Response (ECF No. 14), and Ms. Jaramillo filed a Reply (ECF No. 17).  The Commissioner has also filed the administrative record with the Court.  (ECF No. 7.)  On November 8, 2011, this action was reassigned to the undersigned.  (ECF No. 18.)  After carefully analyzing the briefs and the administrative record, the Court REVERSES the Commissioner's Final Decision and REMANDS for an award of benefits.

## I.  JURISDICTION

     The Court has jurisdiction over this matter under 42 U.S.C. § 405(g).

## II.  BACKGROUND

D.G. was born on March 2, 2000.  (ECF No. 7, at 111.)  On August 2, 2007, Ms. Jaramillo filed an application for supplemental security income on D.G.'s behalf, alleging a disability onset date of March 13, 2007.  (*Id.*)  After the application for supplemental security income was denied (*id.* at 71-73), Ms. Jaramillo requested a hearing before an administrative law judge (*id.* at 76).  Administrative Law Judge E. William Shaffer ("the ALJ") presided over the hearing on May 28, 2009.  (*Id.* at 30-68.)  Ms. Jaramillo, who was represented at the hearing by an attorney, testified on behalf of D.G.  (*Id.*)  Dr. Nancy Winfrey, a clinical psychologist, also testified at the hearing as a psychological expert.  (*Id.*)

On November 2, 2009, the ALJ issued his decision (*id.* at 12-28), concluding that D.G. "has not been under a disability within the meaning of the Social Security Act since July 6, 2007" (*id.* at 13; *see also id.* at 27).  In reaching his decision, the ALJ made the following findings of fact and conclusions of law (in line with the governing three-part test, described below, for determining whether a minor child is disabled under the Social Security Act).  First, the ALJ held that D.G. had not engaged in any substantial gainful activity since July 6, 2007.  (*Id.* at 15.)  Second, the ALJ held that D.G. has the following severe impairments:  abdominal pain of unclear etiology, and attention deficit hyperactivity disorder ("ADHD").  (*Id.*)  Finally, the ALJ concluded that D.G. impairments do not meet or medically equal any of the listed impairments in the governing regulations, and also do not functionally equal any of the listings.  (*Id.* at 16-28.)

Ms. Jaramillo appealed the ALJ's decision on D.G.'s behalf on December 16, 2009 (*id.* at 6-8), and the Appeals Council denied her appeal on January 25, 2011 (*id.* at 1-5).  Ms. Jaramillo appealed that decision by initiating this administrative appeal on March 22, 2011.  (ECF No. 1.)

### III.  ANALYSIS

**A.     Standard of Review**

A district court's review of the Commissioner's determination that a claimant is not disabled within the meaning of the Social Security Act is limited.  *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497 (10th Cir. 1992).  The review is limited to determining whether the Commissioner applied the correct legal standard and whether the Commissioner's decision is supported by substantial evidence.  *Id.* at 1497-98; *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196.  It requires more than a scintilla of evidence but less than a preponderance of the evidence.  *Hedstrom v. Sullivan*, 783 F. Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Also, "[t]he failure to apply the correct legal standard or to provide [a reviewing] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation and internal quotation marks omitted); *see also Winfrey v. Chater*, 92

F.3d 1017, 1019 (10th Cir. 1996) ("[T]he Secretary's failure to apply the correct legal standards, or to show us that [he] has done so, are . . . grounds for reversal."). Although a reviewing court should meticulously examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner.  *Id.*

**B.    Evaluation of Disability**

A child under the age of 18 is "disabled" under the Social Security Act (the "Act") if the child "has a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.906.

There is a three-step sequential process to evaluate whether a child is disabled under the Act.  *See* 20 C.F.R. § 416.924; *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001).  At step one, it must be determined whether the child is engaging in substantial gainful activity.  If the child is engaging in substantial gainful activity, the child is not disabled; if the child is not engaging in such activity, the analysis proceeds to a second step.  20 C.F.R. § 416.924(a); *Briggs*, 248 F.3d at 1237.  The second step involves analyzing whether the child has an impairment or combination of impairments that are severe.  If the impairment is not severe, the child is not disabled; if the impairment is severe, the analysis proceeds to a third step.  20 C.F.R. § 416.924(a); *Briggs*, 248 F.3d at 1237.

At step three, it must be determined whether the impairment meets or medically

equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404 (the

"listings"), and if not, whether the impairment functionally equals the listings.  20 C.F.R.

§ 416.924(a); *Briggs*, 248 F.3d at 1237.  It must also be determined whether the

impairment meets the 12-month duration requirement.  20 C.F.R. § 416.924(a).

The test for whether an impairment meets or medically equals a listing varies

depending on the nature of the impairment.  Because the Court's decision focuses on

the test for functional equivalence, the Court will defer further discussion of the test for

medical equivalence until later in this Order.

Even if an impairment does not meet or medically equal a listing, it still must be

determined whether the impairment functionally equals the listings, which is the same

test regardless of the nature of the impairment at issue.  *See* 20 C.F.R. § 416.926a(a).

In determining whether the impairment functionally equals the listings, there are six

domains to consider:  (1) acquiring and using information; (2) attending and completing

tasks; (3) interacting and relating with others; (4) moving about and manipulating

objects; (5) caring for yourself; and (6) health and physical well-being.  *Id.* §

416.926a(b)(1).  An impairment functionally equals the listings, resulting in a finding of

disability, if there is a "marked" limitation in two of these domains of functioning, or an

"extreme" limitation in one of the domains.  *Id.* § 416.926a(a); *see also id.* § 416.926a(e)

(defining "marked" and "extreme").

C.    **Discussion**

The majority of the ALJ's decision focused on analyzing the six domains for

5

determining whether an impairment functionally equals the listings.  The ALJ found (1) a less than marked limitation in the domain of "acquiring and using information"; (2) marked limitations in the domain of "attending and completing tasks"; (3) less than marked limitations in the domain of "interacting and relating with others"; (4) no limitation in the domain of "moving about and manipulating objects"; (5) less than marked limitations in the domain of "caring for yourself"; and (6) less than mild limitations in the domain of "health and physical well-being."  (ECF No. 7, at 17-27.) Because the ALJ found only one marked limitation among the six domains (rather than two or more), he concluded that D.G. was not disabled under the Act.

In her briefs, Ms. Jaramillo agrees with the ALJ's conclusion that D.G. has a marked impairment in the domain of "attending and completing tasks," and correctly points out that if D.G. were to have a marked impairment in one additional domain, he would be disabled under the Act.  Ms. Jaramillo argues, *inter alia*, that the ALJ erred because substantial evidence does not support a finding that D.G. has less than a marked impairment in the domain of "health and physical well-being."  The Court agrees.

The record (and the ALJ's analysis) indicates that three medical or other sources rendered formal opinions regarding D.G.'s functioning in the domain of "health and physical well-being."  All three individuals (at some point) rated him with "marked" limitations in the domain of "health and physical well-being."  On November 2007, Dr. James J. Wanstrath, a State agency psychological expert, filled out a childhood

6

disability form and indicated that D.G. had a "marked" limitation in this domain.  (ECF No. 8, at 308.)  In March 2009, Susan Lewis (D.G.'s special education teacher) filled out a functional assessment and rated D.G. with a "marked" limitation in this domain.  (*Id.* at 405.)[1]  Also in March 2009, Dr. Michael LaConte, the school psychologist at D.G.'s school, filled out a functional assessment in which he identified D.G. as having a "marked" limitation in this domain.  (*Id.* at 418.)[2]  Notably, Dr. Winfrey, upon whose opinions the ALJ relied heavily in other domains, did not give an opinion in the domain of "health and physical well-being."  (*Id.* at 26, 53.)

In the ALJ's decision finding "less than mild" limitations in the domain of "health and physical well-being," the ALJ first reviewed D.G.'s medical records, discussing D.G.'s various visits to his primary care physician and to the emergency room.  (*Id.* at 26.)  The ALJ also discussed Ms. Jaramillo's testimony at the hearing, explaining several reasons for why the ALJ questioned the credibility of her testimony.  (*Id.*)[3]  The

---

[1] Ms. Lewis had previously formally evaluated D.G. in December 2007, at which time Ms. Lewis rated D.G. with a less than marked limitation in this domain.

[2] The parties agree that Dr. Wanstrath's opinion is that of a non-examining physician, *see* 20 C.F.R. § 416.913(a), § 416.927(e), and that Ms. Lewis's opinion is that of an "other source," *see* 20 C.F.R. § 416.913(d), Social Security Ruling 06-03p.  The parties dispute whether Dr. LaConte is an acceptable medical source or an "other source."  The Court need not resolve this dispute because it finds that its decision is warranted even if Dr. LaConte is considered an "other source."

[3] The ALJ stated, *inter alia*, that "[Ms. Jaramillo] has not sought any anti-depressant medication for [D.G.] and has not returned to counseling services, despite the clear availability of such services within their community.  This suggests that she does not consider his symptoms to be as limiting as the testimony would indicate.  Further, although she contends [D.G.] experiences frequent episodes of [irritable bowel syndrome] that often prevented him from attending school, the evidence does not support his frequency of absences."  (*Id.*)

ALJ also emphasized that D.G. had limited absences from school.  Based on this evidence, the ALJ found less than mild limitations in the domain of "health and physical well-being."

The ALJ then proceeded to explain why he was rejecting the opinions of the three medical/other sources that D.G. had "marked" impairment in "health and physical well-being."  The ALJ "rejected" Dr. Wanstrath's opinion on the ground that "the evidence as a whole fails to show that [D.G.]'s mental health condition is attended by medication side effects, the need for ongoing treatment, or that his ADHD symptoms have disrupted his physical and/or mental health to the point where he has required more than the least restrictive school services setting."  (*Id.* at 26-27.)  As to Ms. Lewis's March 2009 opinion, the ALJ pointed out that Ms. Lewis is not an acceptable medical source, and stated, "while the claimant's physical complaints may have become more frequent during 2009, there is no documentation of accompanying medical visits to substantiate his reported symptoms, nor does the evidence establish that his medical or psychological condition has caused him debilitating illness or the need for escalated treatment."  (*Id.* at 27.)  Finally, the ALJ stated that "there is insufficient support for [Dr. LaConte's] observations, which are not corroborated by primary care practice or hospital records.  Nor does the evidence show the claimant has required placement outside of the regular classroom on more than a minimal basis."  (*Id.*)

Thus, it appears that the ALJ's primary basis for rejecting all three of these opinions was that Ms. Jaramillo failed to seek adequate medical care for D.G. during the

relevant time period. The reasoning appears to be that if D.G. was not actively receiving medical care during this time period, he must not have had a marked limitation in his health and physical well-being. While that reasoning might have some appeal where there are formal opinions supporting the conclusion, or even where there is an absence of formal opinions on the subject, that reasoning cannot overcome the evidentiary weight of the three uncontroverted medical or "other source" opinions here.[4] Also unpersuasive is the ALJ's reasoning that, because D.G. was able to attend school fairly regularly and spent the majority of his school time in a regular classroom, he did not have a marked limitation in his health and physical well-being.

The Court concludes that there is not substantial evidence supporting the ALJ's conclusion that D.G. had less than a mild limitation in the domain of "health and physical well-being." Further, considering the uncontroverted evidence as a whole, the Court finds it appropriate to make an affirmative finding of a "marked" impairment in this domain. Thus, D.G. had "marked" limitations in two of the six functional domains ("attending and completing tasks" and "health and physical well-being"), and thus as a matter of law was disabled during the relevant time period.

As an aside, the Court finds it necessary to comment on one other issue raised in Ms. Jaramillo's appeal. During the hearing before the ALJ, the ALJ made some

---

[4] The Court understands that there was limited discussion in the formal evaluations explaining the bases for the findings of "marked" impairments in "health and physical well-being." However, under the particular circumstances present here – three unconverted formal opinions of marked limitations combined with only unpersuasive reasoning to depart from those opinions – the Court finds that reversal is appropriate.

9

comments to Dr. Winfrey in which he conflated four criteria for medical equivalence for

organic mental disorders,[5] and the six domains for functional equivalence.  Specifically,

the ALJ stated,

> Dr. Winfrey, I just have some clarification.  On these parameters there are
> five areas, and you know, when I first started doing this they were called
> as we identify them today, but just to make the record clear, they've been
> changed and I'm going to go through them with you so you can equate if
> there's any difference in our mind or opinions.  What had been identified
> as Cognitive and Communicative as an area is now known as Acquiring
> and Using Information.  Now, I can't give you any history as to why that
> change occurred, but they are synonymous as far as I understand it in
> terms of evaluating cognitive function.  The next area used to be called
> Motor Functioning or Physical, it's now called Moving About and
> Manipulating Objects.  The third area that we knew as Social is now called
> Interacting and Relating to Others.  And then there was an area entitled
> Response to Stimuli for Children of Zero to One Year, and that's
> now known as Caring for Yourself.  The next area used to be Personal
> Attainment in the Ages of 3 to 18, that's now known as Health and
> Physical Wellbeing.  And the last area used to be known as
> Concentration, Persistence and Pace, and it's now known as Attending
> and Completing Tasks. . . . And again, I don't know why they changed
> them.  I guess they felt that the form needed to be changed, I don't know.

(ECF No. 8, at 51-53.)  The Court highlights these statements because the law is clear

that, although there is some overlap, the four criteria for medical equivalence for organic

mental disorders are *separate and distinct* from the six domains for functional

equivalence.  *See Huffman v. Astrue*, 290 F. App'x 87, 89 (10th Cir. 2008); *Sabala ex*

*rel. I.E.S. v. Astrue*, No. 10-cv-01902, 2011 WL 4485913, at *3 (D. Colo. Sept. 28,

2011); 65 Fed. Reg. 54746, 54755 (Sept. 11, 2000).  Thus, it was error to construe Dr.

---

[5] Those criteria are:  (1) cognitive/communicative functioning; (2) social functioning; (3) personal functioning; and (4) concentration, persistence, or pace.  20 C.F.R. pt. 404, subpt. P, app. 1, § 112.02(B)(2).

Winfrey's opinions regarding the four criteria for medical equivalence as opinions pertaining to certain domains of functional equivalence.

**D.      Remand for Immediate Award of Benefits**

The Tenth Circuit has indicated that "outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose." *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (quotations omitted). Reversal and remand for an award of benefits is appropriate when "the record fully supports a determination that Plaintiff is disabled as a matter of law and is entitled to the benefits for which he applied." *Id.*

Because the Court has held that D.G. was disabled as a matter of law during the relevant time period, it is appropriate to reverse and remand for an immediate award of benefits. The Court orders an immediate award of benefits for the period August 2, 2007 (the application date) through at least November 2, 2009 (the date of the ALJ's decision).[6] The Court defers to the Commissioner the decision of whether the period of disability should extend through a date later than November 2, 2009. And of course, D.G.'s entitlement to disability benefits under the Act will be subject to periodic review.

_____

[6] The parties did not brief the issue of the time period for an award of benefits, but the Court's research indicates the appropriate time period for which to award benefits is from the date of the application for supplemental security income to the date of the ALJ's decision. *See Kepler v. Chater*, 68 F.3d 387, 389 (10th Cir. 1995) (stating that one cannot receive supplemental security income benefits for any period prior to the date the application was filed) (citing 20 C.F.R. § 416.335); *Wall v. Astrue*, 561 F.3d 1048, 1068 n.28 (10th Cir. 2009) (same); *Baldwin v. Barnhart*, 167 F. App'x 49, 51 (10th Cir. 2006) (considering period of disability to be through the date of ALJ's decision) (citing 20 C.F.R. § 416.1476(b)(1)); *West v. Barnhart*, 165 F. App'x 583, 585 (10th Cir. 2006) (same).

*See* 20 C.F.R. § 416.994a.

## IV.  CONCLUSION

Based upon its careful review of the record in this case, the Court concludes that the Commissioner's determination that D.G. was not disabled during the relevant time is not supported by substantial evidence.  Accordingly, the Commissioner's decision is REVERSED.  The Court hereby ORDERS that this matter be REMANDED to the Commissioner for an immediate award of benefits for the period beginning on August 2, 2007, and ending no earlier than November 2, 2009.

Dated this 27th day of June, 2012.

BY THE COURT:

William J. Martínez
United States District Judge

12